## Case No. 13,366.

### STEPHENS et al. v. BALES OF COTTON.

[Bee, 170.] [1]

District Court, D. South Carolina. 1800.

SALVAGE—SERVICES—RISK—AMOUNT OF COMPENSATION—WHO ENTITLED TO SHARE—LOST VESSEL.

1. Vessel wrecked on Charleston bar; her cargo of cotton, &c. cast ashore on the adjoining islands, and there secured by great labour, much risque of health, and some of life, of the salvors. One third of the cotton, and one half of the other articles given as salvage.

[Cited in The Wave, Case No. 17,297; Baker v. The Slobodna, 35 Fed. 541.]

2. A schooner lost in transporting these articles to Charleston, after they had been placed in a state of safety, not entitled to compensation.

In admiralty.

BEE, District Judge. Three suits have been instituted in this court against the articles saved from the ship Argus, lately wrecked on Charleston bar. The goods were cast ashore on several islands contiguous thereto. Restitution is prayed, after such deduction for salvage as this court may think reasonable. It appears that the weather was rather tempestuous, and that great labour and

---

[2] [From 6 N. B. R. 533.]
[1] [Reported by Hon. Thomas Bee, District Judge.]

exertion were necessary, first to place these goods in a state of safety, and then to bring them to Charleston. All this was done by the salvors alone, without any assistance from the ship's crew. It appears also that, without great diligence, much of the cotton would have been washed off from the shore to which it had drifted, and would have been again afloat at sea. The owners of all these islands, and their negroes, were constantly employed for a considerable time, (in some instances for three weeks) in securing, and drying this cotton; after which, it was carted with great labour to distant landing places, from whence it was finally brought to Charleston. During the whole of this time, the crops of those who were employed in rendering this service were neglected; and at this season must have suffered much by grass. The different salvors are upon nearly the same footing. But Mr. Taylor, who lost a schooner, valued at £250 employed in bringing part of this cotton from a landing to Charleston, has libelled for salvage upon that ground. I shall decide upon that point hereafter.

The act of the legislature of this state passed 16th March, 1783, has been produced to shew that goods, circumstanced as these were, shall be restored upon payment of reasonable salvage. This brought forward the question of jurisdiction. The point, indeed, was waived by counsel, but I think it my duty to notice it; for, "consent will not give jurisdiction." This state act was passed previously to the establishment of this court under the federal constitution, and the subsequent act of congress, which gives the district court exclusive cognizance of all civil causes of admiralty and maritime jurisdiction. Such are all matters relative to wreck; and it is settled that incidental circumstances, necessarily flowing from and dependent upon the first cause of action, shall follow the original jurisdiction. In cases of concurrent jurisdiction, either court may decide; so that, in every point of view, I am bound to adjudge this case, without any undue interference with the act of the state, above mentioned. Both this act and the law of nations entitle the salvors to compensation in this case. Marten, Law Nat. 167.

The material consideration regards the quantum of salvage. The service rendered, the risque attending it, and the value of the property saved, are the points by which the decree in this, and every similar case, must be regulated.

Here, the service rendered was considerable. It is proved that the ship's crew abandoned the property; and the captain, who remained for some time on one of the islands, did not assist in any manner. Mr. Mair, by the newspapers and by handbills made known the situation of the vessel, and offered all due encouragement to such as would endeavour to save the cargo; yet no more than 35 bales of cotton, and 15 barrels of tar were saved by these, or any exertions, except those of the salvors, parties to this suit. They, unassisted but by their own negroes, saved 264 bags of cotton, 334 barrels of tar, and a quantity of logwood, fustick, and mahogany, which sold for 600 dollars.

The risque these persons ran was not, I think, so imminent as was contended. They exposed their health, indeed; and Mr. Lawton and his son were actually made ill by their exertions. Several respectable witnesses are of opinion that the salvors ran some risque of their lives in saving the cotton; and declare that they themselves would not have encountered the same, for the whole value of what was saved. The parties, however, seem to have dreaded sickness more than anything else; and they might reasonably do so, for their labour must have been extreme.

As to the third point, the value of what was saved, the sales amount to 12,199 dollars, chiefly arising from the cotton. The tar, &c. produced 1,178 dollars; but these articles of inferior value occasioned much more labour to the salvors, than the cotton.

Upon the whole, I think the libellants are entitled to receive, as a compensation for their very meritorious exertions in this case, one third of the net proceeds arising from the sale of the cotton, and one half the proceeds of the other articles: and I decree accordingly.

With respect to the charge contained in the libel, filed by Mr. Taylor, I cannot, on any principle, admit it. His schooner was not lost while employed in saving the goods; but in conveying them. after they had been placed in safety, to the agent of the owners. He is, therefore, upon a footing with the owners of other coasting, or river vessels, and, like them, entitled to freight, (but to nothing more) on delivery of their lading.